UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 25-20315-CIV-ALTONAGA/Reid

**MACTOWN INC.**,

    Plaintiff,
v.

**ROBERT F. KENNEDY, JR.**,
Secretary of the U.S. Department
of Health and Human Services,

    Defendant.
_____/

## ORDER

**THIS CAUSE** came before the Court upon Defendant, Secretary of the U.S. Department of Health and Human Services, Robert F. Kennedy, Jr.'s ("HHS['s]") Motion to Dismiss [ECF No. 20], filed on April 29, 2025. Plaintiff, MACTown Inc. filed a Response [ECF No. 21]; to which Defendant filed a Reply [ECF No. 22]. The Court has carefully considered the parties' written submissions, the record, and applicable law. For the following reasons, the Motion is denied.

### I.  BACKGROUND

This case arises from Plaintiff's participation in the Provider Relief Fund ("PRF") program, administered by the Health Resources and Services Administration ("HRSA") — a component of HHS — under the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"), Pub. L. No. 116-136, 134 Stat. 281 (2020). (*See* Compl. [ECF No. 1] ¶¶ 6, 14–50; *see also* Mot. 3).[1] The PRF program was created to reimburse eligible healthcare providers for healthcare-related

---

[1] The Court uses the pagination generated by the electronic CM/ECF database, which appears in the headers of all court filings.

expenses and lost revenues attributable to the COVID-19 pandemic.  (*See* Compl. ¶ 17).  As a condition of payment, recipients must "submit reports and maintain documentation" as the HHS Secretary deems necessary to ensure compliance with the CARES Act's requirements, with "such content, and in such time as the Secretary may prescribe[.]"  CARES Act, 134 Stat. at 563 (alteration added).

Plaintiff, a nonprofit organization that provides residential support services for individuals with significant intellectual disabilities, alleges that between July 2021 and December 2021, it received approximately $406,957.11 in PRF payments.  (*See* Compl. ¶¶ 2, 14, 19).  The Terms and Conditions of the PRF program, issued by the HRSA, required Plaintiff to use the funds for eligible purposes and to report their use to the HRSA.  (*See id.* ¶ 20).  Plaintiff claims it diligently prepared its "Phase 4" PRF report ("the Report") and entered the necessary data in the HRSA's online portal by June 2, 2023.  (*See id.* ¶¶ 22–23).  According to Plaintiff, the reporting window abruptly closed that same day, before Plaintiff could hit the "submit" button.  (*See id.* ¶¶ 23–24).

Plaintiff further alleges that, after the portal shut down, it reached out to the HRSA — first by telephone on June 6, 2023, and again on August 28, 2023 — to request assistance in submitting the Report.  (*See id.* ¶¶ 25, 30, 32).  Both times, HRSA representatives confirmed that the Report was saved in the system and advised Plaintiff that no further action could be taken until the HRSA itself issued a formal notice of non-compliance.  (*See id.* ¶¶ 31, 33; *see also* ¶ 26).  That notice finally came months later, on February 2, 2024, when the HRSA demanded repayment of the full Phase 4 award, citing Plaintiff's failure to submit the Report by the deadline.  (*See id.* ¶ 34).

In response, Plaintiff submitted a cover letter and a PDF copy of the Report to the HRSA's Decision Review Request Portal on February 29, 2024, urging the agency to accept it as timely.  (*See id.* ¶¶ 35–36).  The HRSA gave no indication of when or whether it would respond.  (*See id.*

2

¶ 37). Then, on April 16, 2024, the HRSA emailed instructions directing Plaintiff to re-upload the Report through the online portal during a new submission window running from April 16, 2024, to May 16, 2024. (*See id.* ¶ 38).

Plaintiff asserts it either never received or inadvertently overlooked the message, believing the February 29, 2024 submission had satisfied its reporting obligation. (*See id.* ¶¶ 39–40). When Plaintiff discovered the missed email, it promptly asked for another opportunity to submit the Report; but the HRSA denied the request and referred Plaintiff to debt collection, stating its determination was final. (*See id.* ¶¶ 27–28, 42–43). Plaintiff contends that, according to the HRSA's own website, the agency takes multiple steps to communicate with recipients before referring them to debt collection — including issuing both an initial and a final repayment request — none of which occurred here. (*See id.* ¶¶ 27–28).

On August 16, 2024, Plaintiff filed a request for review and notice of appeal with the Departmental Appeals Board (the "DAB"). (*See id.* ¶ 44). Before proceeding, the DAB solicited the HRSA's opinion on whether the DAB had authority to review Plaintiff's appeal. (*See id.* ¶ 45 (citing 45 C.F.R. pt. 16, App. A)). HRSA's Chief of Audit Resolution replied on September 5, 2024, stating that PRF payments are neither mandatory nor discretionary grants and thus, in the HRSA's view, fall outside the DAB's jurisdiction. (*See id.* ¶ 46). The DAB agreed.

On November 22, 2024, the DAB issued a decision concluding it lacked authority to review the HRSA's determination. (*See id.* ¶¶ 48–49). In its transmittal letter, the HRSA noted that judicial review might still be available to Plaintiff under the Administrative Procedure Act

("APA"), Pub. L. No. 79-404, 60 Stat. 237 (1946) (codified as amended in scattered sections of 5 U.S.C.). (*See id.* ¶ 50).

Plaintiff initiated this action on January 21, 2025, asserting two claims under the APA. (*See generally id.*). In Count I, Plaintiff alleges that the HRSA acted arbitrarily and capriciously by refusing to accept the Report despite Plaintiff's substantial compliance with reporting requirements; and that the HRSA's decision-making process failed to provide Plaintiff with due process, particularly given the financial stakes involved. (*See id.* ¶¶ 51–58). In Count II, Plaintiff claims the DAB violated the APA in determining it lacked jurisdiction over Plaintiff's appeal based on the HRSA's September 5, 2024 opinion letter, which incorrectly classified PRF payments as "other financial assistance" rather than grants under the CARES Act. (*Id.* ¶ 61; *see id.* ¶¶ 59–64). Defendant seeks dismissal of the Complaint in its entirety, arguing that the HRSA's repayment demand is committed to agency discretion by law under 5 U.S.C. section 701(a)(2) and, in any event, Plaintiff fails to state a plausible claim for relief.[2] (*See generally* Mot.).

## II.  LEGAL STANDARD

"To survive a motion to dismiss [under Federal Rule of Civil Procedure 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (alteration added; quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Although this pleading standard "does not

---

[2] The Court notes that whether "agency action is committed to agency discretion by law[,]" 5 U.S.C. section 701(a)(2) (alteration added), might, at least under Eleventh Circuit precedent, implicate the Court's subject-matter jurisdiction and thus fall under Rule 12(b)(1). *Contrast LabMD, Inc. v. F.T.C.*, 776 F.3d 1275, 1280 (11th Cir. 2015) (recognizing that whether the APA permits judicial review — there hinging on whether an agency action is "final" for purposes of 5 U.S.C. section 704 — is a question of subject-matter jurisdiction), *with Vahora v. Holder*, 626 F.3d 907, 917 (7th Cir. 2010) (reasoning that the committed-to-discretion question is not properly one of jurisdiction but rather concerns the absence of a judicially manageable standard (citation omitted)), *and Ochoa v. Holder*, 604 F.3d 546, 549 (8th Cir. 2010) (same). Nevertheless, Defendant presents its argument under Rule 12(b)(6), and the Court analyzes it within that framework.

require 'detailed factual allegations,' . . . it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (alteration added; quoting *Twombly*, 550 U.S. at 555). Pleadings must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" *Twombly*, 550 U.S. at 555 (alteration added; citation omitted). "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679 (alteration added; citing *Twombly*, 550 U.S. at 556).

To meet this "plausibility standard," a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (alteration added; citing *Twombly*, 550 U.S. at 556). "The mere possibility the defendant acted unlawfully is insufficient to survive a motion to dismiss." *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1261 (11th Cir. 2009) (citing *Iqbal*, 556 U.S. at 678), *abrogated on other grounds by Mohamad v. Palestinian Auth.*, 566 U.S. 449 (2012). When considering a motion to dismiss, a court construes the complaint "in a light most favorable to the plaintiff" and takes its factual allegations as true. *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997) (citation omitted).

### III.  DISCUSSION

The Court begins with Defendant's argument that the HRSA's repayment demand is committed to agency discretion by law and is therefore unreviewable, before assessing whether Plaintiff states a plausible claim for relief under the APA. (*See generally* Mot.).

#### A.  <u>Whether the HRSA Repayment Demand is Committed to Agency Discretion</u>

The APA establishes a "basic presumption of judicial review for one suffering legal wrong because of agency action." *Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 591 U.S. 1, 16 (2020) (alteration adopted; citation and quotation marks omitted). That presumption can be

rebutted by a showing, as relevant here, that the "agency action is committed to agency discretion by law." 5 U.S.C. § 701(a)(2). To "honor the presumption of review," the Supreme Court has read the committed-to-discretion exception "quite narrowly," reserving it for only those rare "administrative decisions traditionally left to agency discretion[.]" *Regents*, 591 U.S. at 17 (alteration adopted; other alteration added; citations and quotation marks omitted). That "limited category" includes "an agency's decision not to institute enforcement proceedings[.]" *Id.* (alteration added; citation omitted).

The Supreme Court has also recognized that an action is committed to agency discretion when a court would have "no meaningful standard against which to judge the agency's exercise of discretion." *Heckler v. Chaney*, 470 U.S. 821, 830 (1985); *see also Patel v. Cuccinelli*, No. 19-cv-03014, 2020 WL 13660282, at *4 (N.D. Ga. June 24, 2020) ("In the context of agency action, courts have granted 12(b)(6) motions where the plaintiff failed to state a claim upon which relief could be granted because the challenged action was committed to agency discretion by law, and thus a court would have no meaningful standard against which to judge the agency's exercise of discretion." (citations and quotation marks omitted)). Courts ask whether there is sufficient "law to apply" in assessing the agency's action. *Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402, 413 (1971). A key consideration is whether an agency decision "involves a complicated balancing of a number of factors" that are "peculiarly within [an agency's] expertise." *Chaney*, 470 U.S. at 831 (alteration added). In such a scenario, "[t]he agency is far better equipped than the courts to deal with the many variables involved in the proper ordering of its priorities." *Id.* at 831–32 (alteration added).

6

Case 1:25-cv-20315-CMA   Document 23   Entered on FLSD Docket 06/30/2025   Page 7 of 12

CASE NO. 25-20315-CIV-ALTONAGA/Reid

*1. Traditionally Left to Agency Discretion*

Defendant tries to frame the HRSA's conduct as the sort of administrative decision-making traditionally left to agency discretion. (*See* Mot. 10–12); *see also Regents*, 591 U.S. at 17.  But the cases Defendant relies on — including *Chaney* and *Lincoln v. Vigil*, 508 U.S. 182 (1993) — do not support dismissal here.  Those decisions involved quintessential exercises of agency discretion that courts have historically treated as unreviewable, unlike the circumstances here.

In *Chaney*, the Supreme Court held that an agency's decisions not to institute enforcement proceedings — decisions *not* to act — are generally unreviewable under the APA because they reflect the agency's balancing of policy, resource allocation, and enforcement priorities. *See* 470 U.S. at 831–32.  The same is not true of affirmative agency action.  Enforcement decisions and other final agency actions are presumptively subject to judicial review.  *See* 5 U.S.C. § 704; *McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp.*, No. 23-1226, 2025 WL 1716136, at *7 (U.S. June 20, 2025) (explaining that, consistent with the APA's background presumption of judicial review, the "Court's precedents have held that a party usually may seek judicial review of an agency's rule or order in an enforcement proceeding").  Plaintiff challenges exactly the latter type of agency action: the HRSA's decisions to reject its Report and to demand repayment — its *actions*.  (*See* Compl. ¶¶ 22–29, 35–38, 45–50).  While Defendant insists the HRSA's implementation of the reporting requirement is akin to agency decisions that are traditionally committed to agency discretion because it involves balancing sensitive policy priorities in an emergency health crisis (*see* Mot. 11–12), courts routinely review agency compliance with statutory mandates even when the agencies retain some discretion in implementing them, *see, e.g.*, *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 412 (2024).

Defendant's reliance on *Lincoln* fares no better. (*See* Mot. 11). There, the Supreme Court held that an agency's decision to allocate funds from a lump-sum appropriation is generally committed to agency discretion because such appropriations give agencies flexibility to distribute resources among permissible objectives. *See* 508 U.S. at 193. The case involved the Indian Health Service's reallocation of funds originally earmarked for clinical services for handicapped Indian children, which the agency shifted to a nationwide mental health initiative. *See id.* at 186–89. The Supreme Court emphasized that no statute dictated how the funds should be distributed, placing the decision squarely within the agency's discretion. *See id.* at 191–92.

Defendant argues the HRSA's administration of the PRF program is comparable, again citing the need to balance priorities during an unprecedented health crisis. (*See* Mot. 11–12). But the HRSA's challenged conduct is not about allocating resources among policy goals; it is about enforcing a statutory reporting requirement. (*See* Compl. ¶¶ 22–29, 35–38). Courts are well suited to review that kind of agency action.

Finally, Defendant cites *Holbrook v. Tennessee Valley Authority*, 48 F.4th 282 (4th Cir. 2022), which held that an agency's decisions concerning the rates it charged consumers for electricity were traditionally committed to agency discretion. *See generally id.*; (*see also* Mot. 11). That case, too, bears little relevance to the issues presented here.

In *Holbrook*, the court found significant that price-setting is not coercive — noting "[p]rices are agreed-to, not enforced" — and that the TVA's ratemaking enjoyed a long, uninterrupted history of non-reviewability dating back to before the APA. 48 F.4th at 291 (alteration added; citations omitted). No such features characterize the HRSA's enforcement of the CARE Act's statutory reporting requirement for PRF recipients. To the contrary, the HRSA's enforcement of a clear statutory obligation — essentially a compliance check on how federal funds

are used — reflects the type of coercive agency action that courts have consistently reviewed under the APA's framework.[3] *See, e.g.*, *Bennett v. Spear*, 520 U.S. 154, 175–76 (1997) (holding that a statutory provision using the word "shall" imposes a mandatory duty reviewable under the APA).

    *2. Manageable Standard*

Defendant also contends the HRSA's enforcement of the PRF reporting requirement is not subject to judicial review because no meaningful standard for evaluating the agency's enforcement decisions exists. (*See* Mot. 12–13). Defendant cites two cases in support of his argument, but neither works in his favor.

The first, *Chaney*, is, once again, inapposite. There, the Supreme Court underscored the absence of any meaningful standard for evaluating the FDA's decision not to act under the Food, Drug, and Cosmetic Act ("FDCA"), which authorizes — but does not require — enforcement against misbranded or adulterated drugs. *See* 470 U.S. at 830–38. When determining whether agency action is reviewable, courts "must look to the applicable statute, as well as the applicable agency regulations, to determine whether there is 'sufficient law to apply as to allow judicial review.'" *Thomas v. U.S. ex rel. Comm'r*, No. 08-cv-14, 2009 WL 365539, at *2 (M.D. Ga. Feb. 9, 2009) (quoting *Greenwood Utilities Comm'n v. Hodel*, 764 F.2d 1459, 1464 (11th Cir. 1985)).

Unlike the open-ended enforcement discretion in *Chaney*, the CARES Act's reporting requirement — reinforced by the HRSA's implementing rules — provides precisely the kind of standard courts are equipped to apply. *See generally* CARES Act; *see also Chaney*, 470 U.S. at 833–34; (Resp. 4–5). The statute mandates that "recipients of [PRF] payments . . . shall submit reports and maintain documentation as the Secretary determines are needed to ensure compliance with conditions that are imposed by [the statute] for such payments[.]" CARES Act, 134 Stat. at

---

[3] Defendant also cites *Webster v. Doe*, 486 U.S. 592 (1988), but that case turned on the lack of a meaningful standard of review rather than on any tradition of non-reviewability. *See id.* at 600–01.

563 (alterations added). That directive, framed in mandatory terms, is operationalized through a detailed framework: an online portal, fixed deadlines, published Terms and Conditions, and a structured review process. (*See* Compl. ¶¶ 20, 22–29, 35–38, 45–50). Together, these features meaningfully constrain the HRSA's discretion and supply an intelligible framework against which to judge whether the HRSA's refusal to accept the Report and its subsequent repayment demand were arbitrary and capricious.

Defendant's reliance on *Hospital for Special Surgery v. Becerra*, No. 22-cv-2928, 2023 WL 5448017 (D.D.C. Aug. 24, 2023), is similarly unavailing. There, the court found that certain payment allocation decisions — such as the HRSA's decision to implement an outlier cap — were committed to agency discretion and thus unreviewable. *See id.* at *6–*7. The challenge in *Becerra* focused on how the HRSA distributed funds across categories of providers under an allocation methodology, a process Congress left unstructured by design. *See id.* This case, by contrast, concerns the HRSA's enforcement of a statutory reporting mandate that governs the conditions of federal payment. *See* CARES Act, 134 Stat. at 563. Review of that sort of legal obligation — not a policy-driven funding choice — is well within the judiciary's wheelhouse.

Ultimately, whether the HRSA's conduct falls within the narrow category of actions committed to its discretion may depend on the administrative record and the full context of the agency's decision-making. But at this stage — taking the well-pleaded facts as true and viewing them in the light most favorable to Plaintiff — the Court cannot find that the APA bars review as a matter of law.

### B. Whether Plaintiff States Plausible Claims for Relief Under the APA

*i. Count I*

Defendant next contends that Plaintiff's allegations are insufficient to establish that the HRSA's actions were arbitrary and capricious under the APA. (*See* Mot. 13–17 (citing 17 U.S.C. § 706)). Not so.

Plaintiff alleges the HRSA refused to accept a completed Report — timely saved in the portal system and subsequently submitted in PDF form — despite Plaintiff's repeated efforts to clarify its status and request re-submission. (*See* Compl. ¶¶ 30, 32, 35–38, 41–43). Plaintiff further alleges the HRSA failed to respond to these queries, denied Plaintiff another opportunity to submit the Report, and departed from established practice in referring Plaintiff to debt collection. (*See id.* ¶¶ 39–43). Taken as true, these allegations plausibly support a claim that the HRSA's conduct was arbitrary and capricious. *See Mahon v. U.S. Dep't of Agric.*, 485 F.3d 1247, 1260 (11th Cir. 2007) (reasoning that an agency's decision to ignore evidence that supported a plaintiff's claims supported a conclusion that the agency had acted arbitrarily); *see also United Source One, Inc. v. U.S. Dep't of Agric., Food Safety & Inspection Serv.*, 865 F.3d 710, 717 (D.C. Cir. 2017) ("Where an agency departs from established precedent without a reasoned explanation, its decision will be vacated as arbitrary and capricious." (alteration adopted; citation and quotation marks omitted)); *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).

More fundamentally, "[g]iven that the entire administrative record is not before the Court, the Court is unable to conduct the necessary review." *Kazinetz v. U.S. Citizenship &, Immigr. Servs.*, No. 12-cv-81078, 2013 WL 3712337, at *2 (S.D. Fla. July 12, 2013) (alteration added). Without the benefit of that record, it would be premature for the Court to dismiss a claim that ultimately rises or falls on the agency's reasoning. *See id.*

*ii. Count II*

Finally, Plaintiff alleges the DAB acted arbitrarily, capriciously, or contrary to law in disclaiming jurisdiction over Plaintiff's appeal. Defendant insists Plaintiff fails to articulate any statutory or regulatory basis for DAB review and thus cannot state a claim. (*See* Mot. 16–17).

In the pleading, Plaintiff points directly to 45 C.F.R. Part 16, Appendix A — the very provision the DAB cited in declining jurisdiction. (*See* Compl. ¶ 15). That provision confers jurisdiction over determinations "requiring return or set-off of funds already received" under "any HHS program authorizing the award of direct, discretionary project grants[.]" Pt. 16, App. A(C)(a) (alteration added). And Plaintiff alleges the HRSA did exactly that: it made a final determination requiring Plaintiff to return grant funds. (*See* Compl. ¶ 18, 43). Taking those allegations as true, the Complaint supports a plausible inference that the DAB's refusal to entertain the appeal contravened governing law — and thereby ran afoul of the APA.

## IV. CONCLUSION

Accordingly, it is

**ORDERED AND ADJUDGED** that Defendant, Robert F. Kennedy, Jr., Secretary of the U.S. Department of Health and Human Services's Motion to Dismiss **[ECF No. 20]** is **DENIED**. Defendant shall file the Certified Administrative Record by **July 31, 2025**. Motions for summary judgment are due within 30 days of the filing of the Record.

**DONE AND ORDERED** in Miami, Florida, this 30th day of June, 2025.

_____
**CECILIA M. ALTONAGA**
**CHIEF UNITED STATES DISTRICT JUDGE**

cc:   counsel of record